UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN WARD,          )<br>                     )<br>          Plaintiff, )<br>                     )<br>     v.              )<br>                     )<br>JO ANNE BARNHART,    )<br>Commissioner of Social )<br>Security,            )<br>                     )<br>          Defendant. )<br>_____) | Case No. EDCV 05-430-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On May 20, 2005, Joann Ward ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability benefits. On June 30, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 1, 2006, the parties entered into a Joint Stipulation setting forth their arguments.

The matter is now ready for decision.

///

///

///

///

**BACKGROUND**

On January 24, 2002, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits. (Administrative Record ["AR"] at 119-21; 633-35). Plaintiff claimed that her disability commenced on July 23, 2001, due to back and leg pain. (AR at 119, 135). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 88-91; 93-97). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 98). On May 19, 2003, the ALJ conducted a hearing in San Bernardino, California. (AR at 40-85). Plaintiff appeared at the hearing with her counsel and testified. (AR at 40-78). By that time, although plaintiff continued to have musculoskeletal complaints, she also complained of respiratory problems and a more recent onset of heart problems. (AR at 51, 68, 73). Vocational expert Patrick Hartley also testified. (AR at 78-83).

On February 23, 2004, the ALJ issued his decision denying benefits. (AR at 24-37). In his decision, the ALJ concluded that plaintiff suffered from non-insulin dependent diabetes mellitus; history of anterior wall myocardial infarction per EKG; hypertension with left atrial dilation; mild-to-moderate mitral valve regurgitation; history of asthma; non-proliferative diabetic retinopathy; early cataracts; hypothyroidism; lumbar strain; adhesive capsulitis, non-dominant left shoulder; headaches; and depressive disorder, NOS. (AR at 36). But, according to the ALJ, none of these impairments, either individually or in combination, met or equaled any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). Next, the ALJ determined that plaintiff retained the residual functional capacity "to perform work activity at the light

exertional level, with the following nonexertional limitations: never climbing ladders, ropes or scaffolds except in an emergency; occasionally climbing ramps and stairs; never crawling except in an emergency; occasionally balancing, stooping, crouching, and kneeling; no reaching or working above shoulder height with the non-dominant left upper extremity; no jobs requiring sharp near or distance vision; and mentally limited to unskilled work. (AR at 36). The ALJ found that with these restrictions, plaintiff was unable to perform her past relevant work as a nurse's aide. (Id.). Based upon her medical-vocational profile, using medical-vocational Rule 202.18 as a framework for decision-making, and relying upon the vocational expert testimony, the ALJ found that there were a significant number of jobs in the national and local economy that plaintiff could perform. The ALJ ultimately concluded, therefore, that plaintiff was not disabled pursuant to the Social Security Act. (AR at 37).

Disagreeing with the ALJ's decision, plaintiff filed a request for review with the Appeals Council, which was denied. (AR at 4-8, 13-14, 19-20; AR at 9-12).

**PLAINTIFF'S CONTENTIONS**

At the outset, plaintiff contends that the ALJ's summaries of the medical evidence "omits too many details which are highly relevant" to her case. (Joint Stipulation at 2).

The actual issues raised by plaintiff are that (1) the ALJ failed properly to consider whether her heart condition met or equaled the criteria of Listing 4.02B and (2) the ALJ's finding that plaintiff could perform the alternative jobs of production assembler and cashier II was not based upon substantial evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

**DISCUSSION**

**I.  THE ALJ'S SUMMARY OF THE EVIDENCE**

Plaintiff's own summary of the medical evidence indicates more hospitalizations than indicated in the ALJ's summary. However, this is because the hospitalizations took place in May, 2004 and December, 2004, after the ALJ's decision. Therefore, they were not before the ALJ but rather were first submitted to the Appeals Council. Nevertheless, these records constitute part of the administrative record on review. Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

///
///

**II.  WHETHER THE ALJ ERRED IN CONCLUDING THAT PLAINTIFF'S CONDITION DID NOT MEET OR EQUAL LISTING 4.03B**

A claimant has the burden of proving disability, including disability based on the Listing of Impairments. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (Emphasis in original). Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff contends that her condition meets Listing 4.02B. Listing 4.02B for chronic heart failure "while on a regimen of prescribed treatment" requires the following:[1]

> Documented cardiac enlargement by appropriate imaging techniques (see 4.02A) or ventricular dysfunction manifested by S3, abnormal wall motion, or left ventricular ejection fraction of 30 percent or less by appropriate imaging techniques; and
> 1. Inability to perform on an exercise test at a workload equivalent to 5 METs or less due to symptoms of chronic heart failure, or, in rare instances, a need to stop exercise testing at less than this level of work because of:
>> a. Three or more consecutive ventricular premature beats or three or more multiform beats; or

---

[1] The cardiovascular listings found at Section 4.00ff, Appendix 1, Subpart P, 20 C.F.R. Part 404, have been revised effective April 13, 2006.  71 FR 2312-01.

5

     b. Failure to increase systolic blood pressure
       by 10 mmHg, or decrease in systolic pressure
       below the usual resting level (see 4.00C2b);
       or
     c. Signs attributable to inadequate cerebral
       perfusion, such as ataxic gait or mental
       confusion; and
    2. Resulting in marked limitation of physical
      activity, as demonstrated by fatigue, palpitation,
      dyspnea, or anginal discomfort on ordinary physical
      activity, even though the individual is comfortable
      at rest.

Section 4.02B, Appendix 1, Subpart P, 20 C.F.R. Part 404 (2004).

  Plaintiff cites a transesophageal echocardiogram performed on March 28, 2003, which revealed an ejection fraction of 30 per cent as support for her contention that her condition meets Listing 4.02B. (Joint Stipulation at 11; AR at 542). As the Commissioner notes, plaintiff has failed to show that her condition satisfied the other criteria required to meet Listing 4.02B. (Joint Stipulation at 14).

  In order to demonstrate that plaintiff's condition medically equaled the criteria of a listed impairment, plaintiff must show either that there are medical findings which are at least equal in severity to those missing from a listed impairment or she must present evidence "that the combination of impairments established medical equivalence." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). "Equivalence is determined on the basis of a comparison between the 'symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records 'with the medical criteria shown with the listed

6

impairment.'" Id., citing 20 C.F.R. § 404.1526.

Plaintiff argues that the ALJ plainly failed to undertake such a comparison and that this was error. (Joint Stipulation at 11). Plaintiff's argument has merit.

Although plaintiff's alleged disabling impairments at the time of her application for disability benefits were confined to her musculoskeletal system, plaintiff had a long history of hypertension, diabetes, and asthma. (AR at 214). Nevertheless, when seen by consultative examiner, Bahaa Girgis, M.D., in April of 2002, plaintiff had no significant complaints. She denied a history of myocardial infarction, she denied any hospitalizations for hypertension, she denied chronic renal problems, she denied recent asthma flare-ups or the use of oxygen or Prednisone, and she denied any diabetic complications other than retinopathy for which she had laser surgery in the left eye. (Id.). Even so, x-rays taken during the examination revealed that plaintiff already had cardiomegaly.[2] (AR at 219).

In the meantime, plaintiff was hospitalized from August 5, 2002, until August 8, 2002, for unstable angina and pyelonepritis. (AR at 338-40). Cardiac enzymes were negative, and an adenosine cardiolite test was also normal. (AR at 338-39). However, an echocardiogram revealed dilated left atrium and moderately severe mitral annular calcification with thickened mitral leaflets. (AR at 328). She was treated for her pyelonephritis with antibiotics, which she continued to take for twelve days following her discharge. Plaintiff received medication and wore a nitro patch for her hypertension. She was

---

[2] There is, however, no evidence that the consultative examiner, Dr. Girgis, was even aware of the x-ray results. (AR at 214-18).

7

discharged in stable condition. (AR at 339).

Shortly thereafter, in October 2002, her family physician, David Jewell, M.D., completed a multiple impairments questionnaire indicating that plaintiff had multiple diagnoses, including diabetes with "diabetic nephropathy," hypertension, asthma, and hypothyroidism. (AR at 624). He indicated that all of plaintiff's conditions were chronic and that plaintiff had significant symptoms of fatigue due to her primary impairments. (AR at 625; see also AR at 626). As support for his diagnoses, Dr. Jewell cited elevated blood sugar levels and elevated creatinine levels, which may indicate renal problems. (AR at 625). See Section 6.00A and B and section 6.02, Appendix 1, Subpart P, 20 C.F.R. Part 404.

Plaintiff was again hospitalized on March 26, 2003, when she went to the Riverside County Regional Medical Center with complaints of leg swelling and shortness of breath. (AR at 473). An EKG revealed a condition of tachycardia, and chest x-rays revealed cardiomegaly and congestion. The emergency room physician noted plaintiff's previous echocardiogram results, and made an initial assessment of shortness of breath, swelling, and orthopnea likely congestive heart failure secondary to severe mitral regurgitation. (AR at 474). Plaintiff was considered at that time to be in Class 4 failure. (AR at 472). A subsequent transesophageal echocardiogram revealed non-dilated left ventricle with moderately severe global hypokinesis and decreased left ventricular systolic function, dilated left atrium, thickened mitral leaflets with mild mitral annular calcification, and moderate pericardial effusion. (AR at 591). There was also "small vegetation on the A-2 portion of the anterior mitral leaflet on its base on the left atrial side." Plaintiff was diagnosed with infective endocarditis. (AR

at 591; see AR at 520).

During this hospitalization, plaintiff also underwent a nephrology consultation with Yogesh Patel, M.D. Dr. Patel found that plaintiff likely suffered from both acute and chronic renal failure, "chronic secondary to diabetic glomerulopathy, acute probably due to combination of sepsis, ACE inhibitor, gentamycin, etc." (AR at 544). (Joint Stipulation at 6).

Thus, in addition to her musculoskeletal complaints, plaintiff presented evidence of a combination of impairments that affected her overall constitutional well-being, and her testimony included complaints of shortness of breath and fatigue. (AR at 68-70). As the ALJ acknowledged, plaintiff has a history of asthma, and her diabetes mellitus and hypertension have left plaintiff with significant organ damage. This damage includes damage to plaintiff's kidneys, diagnosed as diabetic nephropathy by Dr. Jewell (AR at 624) and chronic renal failure by Dr. Patel (AR at 544). Nevertheless, the ALJ failed to include any renal disease as a medically determinable impairment, and if he rejected this diagnosis, he did not state any reasons for doing so. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)(Clear and convincing reasons are required to reject the uncontroverted opinions of treating physicians.) In any case, it is clear that the ALJ did not consider any renal impairment in assessing the equivalence of the listing.

Although it is possible that the ALJ believed plaintiff's problems were acute and not chronic, post-hearing records suggest otherwise. (AR at 33). In addition to multiple emergency room visits for asthma (AR at 660, 662, 664, 665, 669, 673), less than three months after the ALJ's decision, plaintiff was hospitalized for an exacerbation of asthma, cardiac problems, and chronic renal failure. (AR at 681). Chest x-rays

9

revealed moderate to marked cardiomegaly and minimal congestive heart failure could not be excluded. (AR at 702). An echocardiography also indicated abnormalities, including reduced ejection fraction that had improved since March 2003. (AR at 708). The emergency room physician also noted that plaintiff may need dialysis or a kidney transplant, but that plaintiff should discuss this with her nephrologist. (AR at 682). The records, moreover, suggest that plaintiff had been undergoing treatment or consultation for renal failure with "Dr. Patel who has been well aware of this patient's condition at his office at the Riverside County Regional Medical Center." (AR at 682). Dr. Patel apparently first saw plaintiff on February 5, 2004, and he diagnosed plaintiff as suffering from nephrotic syndrome. (AR at 691).

Even without considering plaintiff's renal problems, the ALJ failed to "'adequately explain his or her evaluation of the combined effects of the impairments'" that he found existed. Marcia, 900 F.2d at 176 (internal citations omitted). Rather, the ALJ merely relied upon the fact that "[n]o physician has opined that the claimant's condition meets or equals any listing, and the state agency program physicians opined that it does not." (AR at 29).

The ALJ's reliance was misplaced. First, it is highly unlikely that a non-program physician such as Dr. Jewell, Mark Jason, M.D., who conducted an examination of plaintiff on her behalf (AR at 437-40), or any of the specialists who evaluated plaintiff during the course of her treatment had any familiarity whatsoever with the listings.

Of course, the State Agency program physicians would have knowledge of the listing, but their conclusions that plaintiff's condition did not meet or equal the criteria of a listed impairment were offered in May 2002 and September 2002. Although plaintiff's first hospitalization for

10

cardiac-related problems occurred in August 2002, there is no evidence that the State Agency physicians considered this information even at the reconsideration level, although they did consider the chest x-ray taken during the consultative examination of April 2002. (AR at 93, 270; see AR at 219). Thus, the opinions upon which the ALJ relied in finding that plantiff's condition did not meet or equal the listing were rendered before plaintiff had any significant cardiac complaints or cardiac or renal problems. At that time, plaintiff's major complaints were confined to her work-related back and leg injuries. (AR at 228-35; AR at 263-71; see AR at 135, 160; see also AR at 214).

Accordingly, the ALJ failed to properly consider the combination of plaintiff's impairments in assessing listing equivalence, and the reasons the ALJ cited in support of his finding that plaintiff's combined impairments did not meet or equal a listed impairment is not based upon substantial evidence. The matter, therefore, requires remand for re-assessment of step three of the sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. Updated records, including ongoing treatment records, laboratory results, and the consultation report of Dr. Patel, should be obtained. The ALJ should also call a medical expert.

### III. VOCATIONAL EXPERT TESTIMONY

Plaintiff also argues that because the DOT[3] describes the jobs of production assembler and cashier II as requiring frequent near visual acuity, the vocational expert's testimony that plaintiff could perform such jobs with a preclusion from "sharp near vision" is not based upon

---

[3] Dictionary of Occupational Titles. "The DOT is 'the Secretary's primary source of reliable job information.'" Johnson v. Shalala, 60 F.3d 1428, 1434 n. 6 (9th Cir. 1995), quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1980).

substantial evidence. (Joint Stipulation at 15). Plaintiff's argument is without merit. As the Commissioner argues, jobs requiring frequent near visual acuity do not necessarily require sharp near vision for fine detail. (Joint Stipulation at 17). The vocational expert specifically testified that these jobs did not require finer vision than as required to read normal print (AR at 81-82), and there is nothing in the DOT description to indicate otherwise.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is not supported by substantial evidence. The Court, therefore, remands the matter to the Commissioner of the Social Security Administration for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 11, 2006

                                      /s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE